91 F.3d 143
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Larry FOX; Jackie Noe; Paul Albright; Nancy Stanton;
Victor Poulsen; Anne Woshlo; Marie Clemente,
Plaintiff-Appellees,
v.
VARITY CORPORATION, Successor To Massey-Ferguson, Inc.;
Massey-Ferguson, Inc., Defendants-Appellants.
 No. 95-1730.
 United States Court of Appeals, Sixth Circuit.
 July 5, 1996.
 
 Before: SUHRHEINRICH and SILER, Circuit Judges and CARR,* District Judge.
 PER CURIAM.
 
 
 1
 Plaintiffs in this class action allege that defendant Varity Corporation[1] violated a collective bargaining agreement by unilaterally altering the health care benefits that it provides. Defendant appeals from the district court's preliminary injunction requiring defendant to provide the pre-alteration level of benefits. We hold that the district court did not abuse its discretion in issuing the injunction and AFFIRM.
 
 BACKGROUND
 
 2
 Beginning in 1964, Massey-Ferguson, Inc. provided free health care insurance to covered retired employees and other eligible individuals pursuant to a collective bargaining agreement with the United Auto Workers ("UAW"). Effective January 1, 1994, defendant altered the fees and services provided, giving rise to this litigation. The class as certified by the district court consists, inter alia, of retired hourly employees, surviving spouses of retired employees, and certain disabled former employees.
 
 
 3
 The relevant language is contained in the 1980 insurance agreement ("Insurance Agreement"). Section 6.02 of the Insurance Agreement stated in pertinent part:
 
 
 4
 6.02. Cost of Coverage. Except as otherwise provided in this agreement, the company shall pay the full cost (including any increases in cost) of Benefit coverage for eligible employees, pensioners and dependents, and survivors of employees or pensioners....
 
 
 5
 Plaintiffs assert a vested right under the Insurance Agreement and/or certain other documents to lifetime health care benefits at the pre-1994 level. They seek relief for breach of contract under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and § 502 of Employee Retirement and Income Security Act of 1974, 29 U.S.C. § 1132. After several procedural maneuvers, the District Court for the Eastern District of Michigan entered a preliminary injunction requiring defendant to provide health benefits at the pre-1994 level.
 
 ANALYSIS
 I. Issuance of Injunction
 
 6
 We review the grant of a preliminary injunction for abuse of discretion. Moltan Co. v. Eagle-Picher Indus., Inc., 55 F.3d 1171, 1175 (6th Cir.1995). In determining whether to issue a preliminary injunction, a district court must consider: (1) the likelihood of success on the merits of the action; (2) any irreparable injury to the plaintiff in the absence of an injunction; (3) whether the grant of an injunction would serve the public interest; and (4) the possibility that an injunction would substantially harm third parties. Id. Defendant contends that the district court erred in evaluating the first and second elements.
 
 A. Success on the Merits
 
 7
 Applying the principles set forth in International Union v. Yard-Man, 716 F.2d 1476 (6th Cir.1983), cert. denied, 465 U.S. 1007 (1984), the district court determined that the Insurance Agreement was ambiguous. After considering extrinsic evidence, the lower court found that the UAW and defendant had intended plaintiffs to receive a vested right to health insurance benefits.
 
 
 8
 It is clear that Yard-Man governs cases of this nature. Golden v. Kelsey-Hayes Co., 73 F.3d 648, 656 (6th Cir.1996), petition for cert. filed, 64 U.S.L.W. 3727 (U.S. Apr. 17, 1996) (No. 95-1674). Yard-Man holds that health insurance benefits can survive the termination of a collective bargaining agreement depending on the intent of the parties. Yard-Man, 716 F.2d at 1479. To determine intent, courts apply the basic rules of contract construction. Id. at 1479-80. Courts may also rely on what has been termed the "Yard-Man inference." The court stated:
 
 
 9
 it is unlikely that [life and health insurance] benefits, which are typically understood as a form of delayed compensation or reward for past services, would be left to the contingencies of future negotiations. The employees are presumably aware that the union owes no obligation to bargain for continued benefits for retirees.... Further, retiree benefits are in a sense "status" benefits which, as such, carry with them an inference that they continue so long as the prerequisite status is maintained.
 
 
 10
 Id. at 1482 (citations omitted).
 
 
 11
 Standing alone, the Yard-Man inference is insufficient to create a right to interminable benefits. Id. We emphasize that the Yard-Man inference does not shift the burden of proof onto the employer nor does it require anti-vesting language. Golden, 73 F.3d at 656. Rather, it is simply a tool to be used in determining the intent of the parties. Id.
 
 
 12
 After review of the relevant documents and the extrinsic evidence produced thus far, we hold that plaintiffs will likely succeed on the merits. We emphasize, however, that our opinion is specifically limited to the context of a preliminary injunction.
 
 B. Irreparable Harm
 
 13
 The district court determined that plaintiffs would suffer irreparable harm as a result of the increased insurance costs and the consequent risk of having to forgo medical treatment. A finding of irreparable injury is reviewable only for clear error. International Resources, Inc. v. New York Life Ins. Co., 950 F.2d 294, 302 (6th Cir.1991), cert. denied, 504 U.S. 973 (1992).
 
 
 14
 Other courts have found that retired union workers are particularly sensitive to even small increases in the cost of insurance coverage. Golden, 73 F.3d at 657; United Steelworkers of Am. v. Textron, Inc., 836 F.2d 6, 8 (1st Cir.1987). Plaintiffs have introduced several affidavits detailing the hardship that they would suffer if the court failed to grant an injunction. In light of these affidavits, and given the unique position of retirees, we reject defendant's contention that there is no irreparable injury.
 
 II. Amount of Bond
 
 15
 The district court required plaintiffs to post a security bond in the amount of $60,000. Defendant contends that this amount is grossly inadequate in light of the fact that complying with the preliminary injunction will cost defendant an estimated $111,000 per month in 1996. This court reviews the setting of the amount of the bond for an abuse of discretion. USACO Coal Co. v. Carbomin Energy, Inc., 689 F.2d 94, 100 (6th Cir.1982).
 
 
 16
 The amount of the bond in this case is consistent with analogous cases. See, e.g., Golden v. Kelsey-Hayes Co., 845 F.Supp. 410, 416-17 (E.D.Mich.1994) (requiring $100,000 bond where injunction would cost company $160,000 per month), aff'd, 73 F.3d 648 (6th Cir.1996); Helwig v. Kelsey-Hayes, 857 F.Supp. 1168, 1181 (E.D.Mich.1994) (requiring $95,000 bond where cost to company was $150,000 per month); Schalk v. Teledyne, Inc., 751 F.Supp. 1261, 1268-69 (W.D.Mich.1990) (requiring $50,000 bond where the defendant claimed that cost to maintain old health plan was $90,000 per month), aff'd, 948 F.2d 1290 (6th Cir.1991). Such an amount protects defendant while appropriately accounting for plaintiffs' limited financial resources. See 11A Charles Wright, Arthur Miller, & Mary Kane, Federal Practice and Procedure § 2954 (2d ed. 1995). The amount of the bond was appropriate.
 
 CONCLUSION
 
 17
 The district court did not abuse its discretion in issuing the instant preliminary injunction. The lower court's order is AFFIRMED.
 
 
 
 *
 The Honorable James G. Carr, United States District Judge for the Northern District of Ohio, sitting by designation
 
 
 [1]
 Successor by merger to Massey-Ferguson, Inc