BRUSH WELLMAN, INC., Plaintiff,

v.

Carlos A. MONTES, et al., Defendant.

Robert Ries, et al., Counter–Plaintiffs,

v.

Brush Wellman, Inc., Counter–
Defendants.

Nos. 3:01CV7383, 3:01CV7462.

United States District Court,
N.D. Ohio,
Western Division.

Nov. 24, 2003.

Keith R. McMurdy, Roetzel & Andress, Cleveland, OH, Denise M. Hasbrook, Roetzel & Andress, Nancy Patrick Greeley, Roetzel & Andress, Toledo, OH, Patrick M. Roche, Davis & Young, Cleveland, OH, for Plaintiffs.

John R. Kuhl, John R. Kuhl & Associates, L.P.A., Steven C. Hales, Bracy & Kuhl, William H. Bracy, City of Toledo, Department of Law, Toledo, OH, Lynn L. Moore, Gallagher, Sharp, Fulton & Norman, Jennifer N. West, Gallagher, Sharp, Fulton & Norman, Cleveland, OH, John T. Murray, Murray & Murray, Sandusky, OH, Lorin J. Zaner, Zaner & Cimerman, Scott E. Spencer, Toledo, OH, Sylvia Antalis Goldsmith, Murray & Murray, Sandusky, OH, for Defendants.

## ORDER

CARR, District Judge.

This is an ERISA case brought by Brush Wellman, Inc., which has a company-funded medical benefits plan, to recover medical benefits paid to Donna Ries and Jessie Wilke, wife and step-daughter, respectively, of a Brush Wellman employee, Robert Ries. The benefits—$43,538.09 to Mrs. Ries, and $219,056.48 to Ms. Wilke—were paid following a motor vehicle collision which seriously injured Mrs. Ries and Ms. Wilke.

Initially, Brush Wellman sued the driver, Carlos Montes, and owner, Jorge Reyes, of the truck that collided with the Rieses' vehicle, and their putative employer, Northwest Ohio Produce, Inc.. Subsequently, Brush Wellman was granted leave to join the Rieses as defendants following receipt by Mrs. Ries and Ms. Wilke of a settlement by the Hartford Casualty Company of an uninsured/underinsured motorists (UM/UIM) claim by the Rieses against Hartford, Brush Wellman's auto liability insurer.[1]

After settling with the Rieses, Hartford also sued Reyes, Montes, and Northwest Ohio Produce, asserting a claim for subrogation against those defendants. This suit, *Hartford Casualty Co. v. Montes, et al.*, No. 3:01CV7642, has been consolidated with Brush Wellman's suit.

After being sued, the Rieses brought a counterclaim against Brush Wellman, contending that Brush Wellman's medical benefits plan does not contain a right of subrogation, and alleging, on behalf of a class of beneficiaries of that plan that Brush Wellman has misrepresented its right to subrogation in its dealings with those beneficiaries. Recovery is sought on a class-wide basis for, inter alia, Brush Wellman's alleged breach of fiduciary duty to the class members.

In response to the Rieses's contention that it does not have a right of subrogation, Brush Wellman has filed a motion for leave to amend its complaint by interlineation to state a claim for recovery under a constructive trust theory.

---

1. The Rieses' claim against Hartford was brought under Ohio's *Scott–Pontzer* doctrine, whereby employees could claim UM/UIM coverage under their employer's auto liability policies. *See Scott–Pontzer v. Liberty Mut. Fire Ins. Co.*, 85 Ohio St.3d 660, 710 N.E.2d 1116 (1999). The Ohio Supreme Court substantially abrogated its holding in *Scott–Pont-* zer in *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 797 N.E.2d 1256 (2003).

Brush Wellman has been granted leave to dismiss its claim against Ms. Wilke, without prejudice. Still pending is Brush Wellman's claim for $43,538.09 against Mrs. Ries, who received approximately $123,000 from the settlement with Hartford.

In an earlier opinion, I concluded that Reyes and Montes were independent contractors at the time of the accident, rather than employees of Northwest Produce. (Doc. 111). The effect of this ruling is to relieve Northwest Produce of any vicarious liability for the negligence of Reyes, which caused the accident and resulting injuries.

Several motions are pending. These include, in addition to Brush Wellman's motion for leave to amend its complaint (Doc. 92): 1) Hartford's motion for summary judgment (Doc. 83); 2) Brush–Wellman's motion to strike Hartford's motion for summary judgment (Doc. 102); 3) Northwest Produce's motion for summary judgment against Brush Wellman (Doc. 90); 4) Rieses' motion to dismiss Brush Wellman's amended complaint and for partial summary judgment on their counterclaim against Brush Wellman (Doc. 85); and 5) Brush Wellman's cross-motion for summary judgment on Rieses' counterclaim (Doc. 98).

For the reasons that follow, Brush Wellman's motion to strike shall be denied, Hartford's motion for summary judgment shall be overruled for want of a case or controversy, though its brief shall be accepted amicus curiae, and Northwest Produce's motion for summary judgment shall be granted.

In addition, Brush Wellman's motion for leave to file an amended complaint shall be granted, Rieses' motion to dismiss Brush Wellman's amended complaint and for partial summary judgment on the counterclaim against Brush Wellman shall be denied; and Brush Wellman's cross-motion for summary judgment on the counterclaim shall be granted.

### 1. Hartford's Motion for Summary Judgment and Brush Wellman's Motion to Strike

Brush Wellman moves to strike Hartford's motion for summary judgment on the basis that Hartford has asserted no claim against Brush Wellman, and Brush Wellman has asserted no claim against Hartford. Hartford agrees, and asks that its brief in support of its motion for summary judgment be deemed a brief amicus curiae on the issues in dispute between Brush Wellman and the Rieses. The Brush Wellman motion to strike shall be denied, and the Hartford motion for summary judgment shall be denied. As a result of these rulings, Hartford's brief in support of its motion shall be deemed to be a brief amicus curiae.

### 2. Northwest Produce's Motion for Summary Judgment

As noted, because Reyes and Montes were independent contractors, Northwest Produce cannot be held liable vicariously for their negligence. Thus, Hartford cannot maintain its claim for subrogation against Northwest Produce. Northwest Produce's motion for summary judgment shall, accordingly, be granted.

### 3. Brush Wellman's Motion for Leave to Amend its Complaint

Brush Wellman's complaint, as amended with the addition of the Rieses as defendants, states that Brush Wellman seeks "to enforce Brush Wellman's right of reimbursement against R. Ries, D. Ries, and Wilke, pursuant to the terms of the [Brush Wellman's Medical Benefits] Plan, for medical expenses paid" to Mrs. Ries and Ms. Wilke. (Doc. 64, ¶ 9). Count III of Brush Wellman's complaint asserts a claim for reimbursement per "right of subrogation under the Plan" and alleges that the defendants have breached terms of the Plan. *Id.* ¶ 24. Count IV alleges unjust enrichment. The prayer for relief contains no specific reference to equitable relief, though the last paragraph of the prayer asks for costs and such other relief as may be appropriate.

Brush Wellman seeks leave to amend its complaint to seek equitable relief in the form of imposition of a constructive trust on a portion of the monies received by Mrs. Ries from the settlement of her UM/UIM claim against Hartford. Specifically, Brush Wellman wants to add the following demand to its prayer for relief:

> Alternatively, judgment against Defendants R. Ries, D. Ries, and Wilke in amount equal to the medical expenses paid to or on behalf of D. Ries and Wilke or in a lessor [sic] amount depending on recovery from remaining defendants.[2]

In opposing Brush Wellman's motion for leave to amend, the Rieses argue that, even if leave to amend by interlineation is granted: a) the complaint will not plead the facts necessary to establish a constructive trust; b) Brush Wellman's claim, no matter how denominated or pled, will still be a legal, rather than an equitable claim; and c) the funds sought to be recovered do not "in good conscience" belong to Brush Wellman because its ERISA plan does not entitle it to recoupment of the monies it paid for Mrs. Ries's medical expenses.

## A. Adequacy of Pleading

■ A constructive trust is

A trust by operation of law which arises contrary to intention and in invitum, against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy. It is raised

by equity to satisfy the demands of justice.

*In re Morris,* 260 F.3d 654, 667 (6th Cir. 2001) (citing *Ferguson v. Owens,* 9 Ohio St.3d 223, 225, 459 N.E.2d 1293 (Ohio 1984) (per curiam) (quoting 76 Am.Jur.2d Trusts § 221 (1975))).

■■ As stated in *Banasiak v. Banasiak,* 1981 WL 5650, *2 (Ohio App. 6 Dist.), [A] constructive trust is imposed in order to prevent unjust enrichment. The unjust enrichment may arise out of the wrongful acquisition of the title to property or the wrongful retention of property. See, Scott, The Law of Trusts, Volume 5, Section 462, et seq. A constructive trust does not have the elements of a trust, it is a remedy created by equity. Scott on Trusts, supra, at 3413, favorably cites J. Cardozo for his definition of a constructive trust:

> " 'A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee.' "

■ The Rieses claim that, even if amended as requested by Brush Wellman, the complaint will not state the elements of a claim for imposition of a constructive trust. One of the elements of a claim for imposing a constructive trust in the ERISA context is that the funds at issue can "clearly be traced to particular funds or property in the defendant's possession." *Great–West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 212, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002) (citing 1 Dobbs

---

2. As noted, Brush Wellman has dismissed its claims against Ms. Wilke, without prejudice. Mr. Ries appears to be joined as a party by virtue of his possession, actual or constructive, of the funds at issue here—i.e., monies paid by Brush Wellman for Mrs. Ries's medical expenses, for which Brush Wellman wants reimbursement from the settlement proceeds received by Mrs. Ries.

§ 4.3(1), at 587–588; Restatement of Restitution, supra, § 160, Comment a, at 641–642; 1 G. Palmer, Law of Restitution § 1.4, p. 17; § 3.7, p. 262 (1978)).

In *Community Health Plan of Ohio v. Mosser*, 347 F.3d 619, 624 (6th Cir.2003), the Sixth Circuit held that a complaint failed to state an equitable cause of action cognizable under ERISA, where the complaint failed to allege that the plan "had given certain funds to [the beneficiary], [could] trace those funds to the settlement funds from [a tortfeasor], allege that [the beneficiary] was unjustly enriched by retaining the settlement funds, and seek the return of the settlement funds in [the beneficiary's] possession."

■ I conclude that the complaint, as amended by interlineation, can fairly be read to assert, albeit not artfully, that: 1) Brush Wellman paid benefits (i.e., certain funds) to the Rieses; 2) Hartford paid a settlement which exceeded the medical expenses incurred by the Rieses, and the settlement monies can be traced to those expenses, as borne by Brush Wellman; 3) the Rieses have thereby been enriched unjustly; and 4) the Rieses are wrongfully withholding the funds.

I conclude, accordingly that amendment by interlineation cannot be refused on the basis that the resulting complaint fails to state a claim for imposition of a constructive trust. While a rewritten complaint would have set forth the claim more clearly, interlineation suffices in this instance.

## B. Equitable Nature of the Claim

The Rieses contend that denomination of Brush Wellman's claim, as amended, as equitable, rather that legal in nature, is a sham and pretext undertaken to overcome the Rieses' contentions that ERISA does not allow Brush Wellman to bring a legal claim against them.

■ The basis for this contention— namely, that ERISA does not authorize legal, as opposed to equitable claims—is well founded. The ERISA jurisdictional provision, 29 U.S.C.A. § 1132(a)(3), authorizes suits by a plan participant, beneficiary, or fiduciary "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

■ In light of this provision, ERISA "does not authorize actions brought by ERISA plan fiduciaries against plan beneficiaries to enforce plan reimbursement provisions through money damages" because "when a fiduciary seeks to impose personal liability on a plan beneficiary for a contractual obligation to pay money, the action is an action at law, not an action in equity." *Community Health Plan of Ohio*, 347 F.3d at 623 (citing *Great–West, supra*, 534 U.S. at 209–10, 122 S.Ct. 708).

■ Where, however, a fiduciary seeks an equitable, rather than a legal remedy, such claim is cognizable under ERISA. *Great–West*, 534 U.S. at 212, 122 S.Ct. 708 ("a plaintiff could seek restitution in equity, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession.").

■ In light of the express imprimatur given in *Great–West* to suits in equity seeking to impose a constructive trust, I reject the Rieses' contention that the complaint, as amended would "boil[ ] down to little more than a veiled request for money damages." Personal liability against the Rieses is not being sought; this suit is, rather, against specific funds—namely, a portion of the settlement proceeds—in their possession. If those funds are not

extant, or if "in good conscience" those funds, though still extant, should not, as a matter of equity, be returned to Brush Wellman, the Rieses will prevail. This will be true, even if the plan, as a matter of contract interpretation, would require repayment as a matter of law.

## C. The "Good Conscience" Issue

The Rieses oppose the motion for leave to amend the complaint on the basis that the funds "in good conscience" belong to them, and thus any amendment contending otherwise would be futile.

■ This contention does not defeat the proposed amended complaint, because the issue of whether "in good conscience" the Rieses should retain the monies at issue is a matter for the trier of fact, and cannot properly be resolved at this stage.

In light of the foregoing, I conclude that the motion for leave to amend the complaint should be granted.

## 4. Rieses' Motion to Dismiss Amended Complaint/For Summary Judgment on Their Counterclaims and Brush Wellman's Motion for Summary Judgment

The Rieses seek dismissal of Brush Wellman's amended complaint on several grounds, including: a) Brush Wellman lacks standing to assert a right to recovery under ERISA; b) this court lacks subject matter jurisdiction over Brush Wellman's claims; and c) Brush Wellman has no right of reimbursement under the terms and provisions of its Medical Benefits plan.[3]

Brush Wellman seeks summary judgment as to Rieses' counterclaim on the basis that: a) the plan documents provide a right of reimbursement; b) a constructive trust can be imposed; c) otherwise the Rieses will be unjustly enriched; and d) the make whole doctrine does not apply.

At the heart of this dispute is the issue of whether the plan gives rise to an actionable claim in favor of Brush Wellman and against the Rieses. If so, their motion to dismiss and for partial summary judgment on their counterclaim must be denied, and Brush Wellman's motion for summary judgment on the counterclaim must be granted. If not, then the Rieses are entitled to prevail on the pending motions.

## A. Brush Wellman's Standing

■ According to the complaint, Brush Wellman is the plan administrator as well as the sponsor of a self-funded benefits plan. Under the plan, Brush Wellman reviews claims submitted for appeal. Thus, Brush Wellman alleges that it has the discretionary authority in the administration of the plan.

These allegations suffice to give Brush Wellman standing. *Coyne & Delany Co. v. Selman,* 98 F.3d 1457, 1464–65 (4th Cir. 1996) ("A plan sponsor, ..., does not acquire standing as a result of its statutory title of sponsor.... On the other hand, a plan sponsor does become a fiduciary [if] ... it retains or exercises 'any discretionary authority' over the management or administration of a plan.").

The Rieses also argue that Brush Wellman brings this action not as a fiduciary, but in its own corporate interest, and thus should not be accorded standing. I dis-

---

**3.** The Rieses also contend that any state law claims, such as for unjust enrichment or to impose a constructive trust, are preempted by ERISA. This is correct, *see, e.g., Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 62, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987), but immaterial, because, as discussed herein, these claims are alleged to arise under § 1132(a)(3)(B), which authorizes suits for equitable relief by fiduciaries to "enforce any provisions of ... the terms of the plan." Such equitable relief can include a claim to impose a constructive trust and a claim of unjust enrichment in violation of the terms of the plan.

agree: to ensure that it has assets available to meet claims of all beneficiaries, Brush Wellman must, in its fiduciary capacity, seek to enhance those assets by pursuing means authorized in its plan and by ERISA to do so—i.e., as in this case, by an action for reimbursement of funds owing to it. I agree, accordingly, the Brush Wellman can maintain this action in a fiduciary capacity. *See Mason v. Jones*, 1992 WL 205917, *2 (N.D.Ill. Aug. 19, 1992) (self-funded plan could maintain action for reimbursement of benefits).

### B. Jurisdiction

The Rieses contend that this court lacks jurisdiction because Brush Wellman's claims are in the nature of legal, rather than equitable claims.

In view of the discussion in Subsection 3.B, *supra*, I conclude that Brush Wellman's claims for unjust enrichment and imposition of a constructive trust are equitable, rather than legal. This court, accordingly, has jurisdiction to adjudicate those claims under § 1132(a)(3)(B).

### C. Right of Reimbursement Under the Plan

The terms and conditions of the Brush Wellman medical benefits plan are described in two documents. The first of these is the "Brush Wellman Flexible Benefits Program As In Effect Beginning January 1, 1994" (Doc. 86, Exh. B) ("Program document"), which sets forth the terms and conditions of the plan. The second is the "Brush Wellman Hourly Your Flexible Benefits Program Effective 1–1–99" (Doc. 86, Exh. A), which "summarizes the benefits" of the plan (*Id.*, Introduction—1), and is a summary plan description (generally referred to as a summary plan document) under ERISA. 29 U.S.C. § 1022. *See Thompson v. Federal Exp. Corp.*, 809 F.Supp. 950, 955 (M.D.Ga.1992) (Summary Plan Document is a "statutorily required means of informing plan participants of

their rights and responsibilities under an ERISA governed benefit plan.").

There is no statement about, or provision relating to a right of subrogation, reimbursement, refund, or recoupment in the Brush Wellman Flexible Benefits Program. That document contains, however, the following statement in a section captioned "Comprehensive Health Care":

The terms and conditions summarized herein and additional terms and conditions regarding the Comprehensive Health Care Plans are set forth in summary plan description handbooks and in separate contracts with an insurance company and certain HMO/PPOs, *which are incorporated herein by reference.*

(Doc. 86, Exh. B, at 9) (emphasis added).

The summary plan description, in contrast with the Flexible Benefits Program document, which is, as noted, silent on the issue of subrogation or other right of recovery, states:

*Subrogation*

It is not the intention of the Company or the insurance companies to cover medical or dental expenses for treatment of injuries sustained that are rightfully the responsibility of a third party. For this reason, the Plans have subrogation provisions. This means that the Plans will make prompt payment of benefits, even though a third party is liable, but the right is reserved to have such payment refunded if the liability is later assumed by the third party.

(*Id.*, Exh. A, at Other—3).

The portion of the summary plan description relating to medical benefits contains a section captioned "Exclusions and Other Limitations," which includes, inter alia, the following provision:

Charges for conditions for which others are responsible. Charges to the extent a payment as a judgment, settlement, or

otherwise by any person or person considered responsible for the cond[i]tion giving rise to the charges, or by their insurers. See OTHER section for details on Subrogation.

(*Id.*, Exh. A, at Medical—14, ¶ 13).

The Brush Wellman Flexible Benefits Program document contains no similar language or exclusion.

■ The Rieses argue that because only the summary plan description, and not the Program document contains the subrogation and exclusion provisions, Brush Wellman cannot seek reimbursement. A summary description, they contend, cannot give the plan rights which are not included in the Program document.

■ As a general rule, where there is a conflict between the Plan document and a summary plan description, the provision of the summary plan description controls. *Edwards v. State Farm Mutual Auto. Ins. Co.*, 851 F.2d 134, 136 (6th Cir.1988) ("This Circuit has decided that statements in a summary plan are binding and if such statements conflict with those in the plan itself, the summary shall govern."). In that case, the beneficiary had received only the summary plan description, which contained a provision more favorable to the beneficiary than the provisions of the underlying plan.

■ In this case, however, the summary plan description contains a provision that favors the program, and which finds no support within the four corners of the Program document. I concur with the view of my colleague, the Hon. David A. Katz, that a plan "cannot validly claim in a SPD a right the plan documents do not give it." *Gilbert v. Doehler–Jarvis, Inc.*, 87 F.Supp.2d 788, 794 (N.D.Ohio 2000) (Katz, J.).

In that case retirees, pursuant to a collective bargaining agreement, claimed to be entitled to lifetime health benefits un-

der the company's plan. The summary plan description contained a reservation of rights purporting to authorize the company to modify or terminate plan benefits. *Id.* Citing *Edwards*, 851 F.2d at 136, the company argued "that it should be entitled to rely on its own SPD" because "statements in a summary plan are binding and if such statements conflict with those in the plan itself, the summary shall govern."

■ Rejecting this contention, Judge Katz stated:

The Company misstates the law. It is unquestionably true that a promise made in a SPD is binding on the employer regardless of conflicting language in a master agreement. *Helwig v. Kelsey–Hayes Co.*, 93 F.3d 243, 249 (6th Cir.1996). But the employer cannot rely on its own SPD to create a right the underlying insurance documents do not give it. The Company has cited to no case supporting such a proposition, and this Court is unaware of any such case.

Beyond lacking case-law support, the Company's argument is patently absurd. Employees are entitled to rely on an employer's representations in a SPD under the principles underlying equitable estoppel, and to effectuate Congress' intent to "create disclosure requirements which would enable the individual participant to know exactly where he stands with respect to the plan"; and also it serves "to arm employees with enough information to enable them to enforce their rights." *Helwig*, 93 F.3d at 249. Adopting the Company's position in this case would accomplish none of those goals. Equitable estoppel principles allow an employee reasonably to rely on an employer's representations; they do not allow an employer unilaterally to impose a change on an employee subject to a CBA merely by giving notice of that change. In addition, the Company's po-

sition, rather than enabling employees to be certain of their rights under a plan, would create confusion by making it impossible for employees to rely on the plan documents themselves. Most importantly, this Court will not countenance a rule that could permit a company to unilaterally take away contractually bargained-for rights. *International Ass'n of Machinists v. Masonite Corp.*, 122 F.3d 228, 233 (5th Cir.1997) (citing *Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1297 (6th Cir.1991)). The reservation of rights clause in the SPD does not provide probative evidence of an intent to end retiree health care benefits at the termination of the collective bargaining agreement.

87 F.Supp.2d at 794.[4]

Thus, standing alone, the summary plan description cannot give rise to a right to reimbursement that is not found in the underlying Program document.

 In response to this argument, Brush Wellman contends that the underlying Program document incorporates the subrogation and exclusion provisions contained in the summary plan description. Brush Wellman points to the provision of the Program document, as recited above, that states that "additional terms and conditions regarding the Comprehensive Health Care Plans are set forth in summary plan description handbooks and in separate contracts with an insurance company and certain HMO/PPOs, *which are incorporated herein by reference.*" (*Id.*, Exh. B, at 9) (emphasis added).

Determination of this dispute depends on whether the clause, "which are incorpo-

rated herein by reference" relates to all the documents listed in that sentence (i.e., "summary plan description handbooks" and "separate contracts with an insurance company and certain HMO/PPOs") or only to the phrase "separate documents with an insurance company and certain HMO/PPOs". If the language, "which are incorporated herein by reference" modifies only "separate contracts," Brush Wellman cannot prevail. In that case, anything found in a summary plan description has not become a part of the Program document via the cross-reference.

If, on the other hand, the incorporation clause relates to both the summary plan description and "separate contracts," the Program document provides a basis for Brush Wellman's reimbursement claim.

I conclude that this language most properly can be read as incorporating by cross-reference the terms and conditions of not only "separate contracts with an insurance company and certain HMO/PPOs," but also the terms and conditions of summary description handbooks.

 I base this determination on a basic rule of grammatical interpretation—the "last antecedent rule." That rule provides that, "[o]rdinarily, qualifying phrases are to be applied to the words or phrase immediately preceding and are not to be construed as extending to others more remote." *United States v. Pritchett*, 470 F.2d 455, 459 n. 9 (D.C.Cir.1972). As stated in a treatise, "Referential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent[, which consists of] the last

---

4. Judge Katz emphasized the fact that the retirees' lifetime benefit had been the subject of a collective bargaining agreement. There is no indication in the present record as to whether the Brush Wellman program is the product of collective bargaining. Nonetheless, Judge Katz's principal holding—that a

plan cannot unilaterally assert rights stated in a summary plan description that are not found in an underlying plan document—is equally applicable where collective bargaining negotiations played no role in the plan's adoption, terms, or implementation.

word, phrase, or clause that can be made an antecedent without impairing the meaning of the sentence." Norman Singer, 2A Statutes and Statutory Construction § 47:33 (6th ed.2000) (footnote and internal quotation marks omitted); see also *City of Toledo v. Beazer Materials and Services, Inc.*, 912 F.Supp. 1051, 1059 (N.D.Ohio 1995), *rev'd on other grounds*, 103 F.3d 128 (6th Cir.1996) (unreported).

The provision at issue begins with the general, and inclusive language, "The terms and conditions summarized herein and additional terms and conditions". That language is followed immediately, and modified by "regarding the Comprehensive Health Care Plans".

The ensuing language, "are set forth in summary plan description handbooks *and* in separate contracts with an insurance company and certain HMO/PPOs" (emphasis added), can only refer to the phrase "additional terms and conditions" in the initial clause, because the prior phrase, "terms and conditions" have already been "summarized herein," and thus cannot be "additional terms and conditions regarding the Comprehensive Health Care Plans."

Thus, the language, "additional terms and conditions regarding the Comprehensive Health Care Plans are set forth in summary plan description handbooks and in separate contracts with an insurance company and certain HMO/PPOs" is a self contained unit, which in turn, is succeeded and modified by the language of incorporation ("which are incorporated herein by reference.").

▮ To read that concluding phrase as relating to and modifying only "separate contracts" would make the reference to "summary plan description handbooks" surplusage in violation of a basic principle of contract construction: namely, "that, if possible, every provision in a contract be given effect, if it can reasonably be done." *Personal Indus. Bankers v. Citizens Bud-*

*get Co. of Dayton, Ohio*, 80 F.2d 327, 328 (6th Cir.1935); *Waste Management, Inc. v. Rice Danis Industries Corp.*, 257 F.Supp.2d 1076, (S.D.Ohio 2003) ("a contract must be construed as a whole and the parties' intent ascertained from the entire instrument with every provision being given effect, rather than from its detached parts."). (citing *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Authority*, 78 Ohio St.3d 353, 678 N.E.2d 519 (1997); *Tri-State Group, Inc. v. Ohio Edison Co.*, 151 Ohio App.3d 1, 782 N.E.2d 1240 (2002)).

I conclude, accordingly, that the subrogation and exclusion provisions, though contained only in the summary plan description, and not found directly in the Program document, have been incorporated into the Program document by its cross-reference language.

▮ The Rieses argue that, even if this is so, a plan cannot be "subrogated" vis-a-vis a beneficiary. Subrogation, they contend, relates only to a claim which arises against a third party as a result of a payment made to a beneficiary as a consequence of the third party's conduct, where the beneficiary has or had a claim against the third party. *See Morris v. Crete Carrier Corp.*, 105 F.3d 279, 281 (6th Cir.1997) ("Subrogation is defined as: [t]he substitution of one person in the place of another with reference to a lawful claim, demand or right, so that he who is substituted succeeds to the rights of the other in relation to the debt or claim, and its rights, remedies, or securities.") (citing Black's Law Dictionary 1427 (6th ed.1990)). Subrogation cannot, therefore, be asserted where the party against whom a right of subrogation is asserted is the same as the party to whom payment has been made.

In this case, however, summary plan description, though labeling the right to reimbursement as "subrogation," reserves

a right "to have such payment [i.e., by the company under the plan] refunded if the liability is later assumed by the third party"—i.e., a tortfeasor. (Doc. 86, Exh. A, at Other—3). The summary plan description, as incorporated into the Program document, moreover, expressly states that the plan does not cover "Charges for conditions for which others are responsible." (*Id.*, at Medical—14).

I conclude, accordingly, that Brush Wellman has a right under the plan to seek reimbursement for the monies it paid to the Rieses for Mrs. Rieses' medical expenses, and for which she has received a settlement under the Hartford UM/UIM policy due to the tortfeasor's underinsured status. In view of the equitable nature of this claim, it is for the trier of fact to determine whether such refund can be compelled "in good conscience."

In light of the foregoing, the Rieses' motion to dismiss and for partial summary judgment on their counterclaim will be overruled and Brush Wellman's motion for summary judgment on the counterclaim shall be granted.

### Conclusion

It is, therefore,

ORDERED THAT:

1. The motion of Brush Wellman, Inc. to strike (Doc. 102) be, and the same hereby is denied;

2. The motion of the Hartford Casualty Company for summary judgment (Doc. 83) be, and the same hereby is denied for want of a case or controversy; Hartford's brief deemed to be filed amicus curiae;

3. The motion of Northwest Produce, Inc. (Doc. 90) be, and the same hereby is granted;

4. The motion of Brush Wellman, Inc. for leave to amend its complaint (Doc. 92) be, and the same hereby is granted;

5. The motion of Robert Ries, et al., to dismiss and for partial summary judgment on their counterclaim (Doc. 85) be, and the same hereby is denied; and

6. The motion of Brush Wellman, Inc. for summary judgment on the Ries counterclaim (Doc. 98) be, and the same hereby is granted.

7. A scheduling conference is set for December 18, 2003 at 9:00 a.m.

So ordered.