706 P.2d 1358

**Bill GIBSON and Dave Swallow dba
Elko Firewood & Fencepost,
Plaintiffs-Respondents,**

v.

**Ned HARDY and Marne Hardy, husband
and wife, Defendants-Appellants.**

No. 14875.

Court of Appeals of Idaho.

Sept. 18, 1985.

J.D. Hancock and Dean Dalling of Smith, Hancock & Moss, Rexburg, for defendants-appellants.

No appearance by plaintiffs-respondents.

SWANSTROM, Judge.

Ned and Marne Hardy appeal from a district court judgment awarding damages to plaintiffs Gibson and Swallow caused by the Hardys in negligently performing a slash piling contract for the United States Forest Service (USFS). The Hardys assert that the judgment must be set aside because of the following errors: first, that plaintiffs had no justiciable interest in the property which was admittedly damaged or destroyed by the Hardys; second, that the trial court erred in concluding the Hardys breached a legal duty to plaintiffs to exercise due care not to damage or destroy wood materials being salvaged by plaintiffs; third, that the court's findings as to damages are not supported by substantial, competent evidence. We affirm the judgment as to liability but we vacate and remand on the issue of damages.

In July 1978 Marne Hardy signed a contract with the USFS for slash piling several designated "units" or areas of forested land in the Island Park area of eastern Idaho. Marne's husband, Ned, actually performed the contract. For convenience, we will simply refer to one or both of these parties as "Hardy." The contract work involved cutting down or pushing over standing trees and piling them along with all other logs, treetops and limbs within certain unit boundaries for later disposal by burning. The work was to be fully performed in ninety days.

At approximately the same time, Gibson and Swallow, as salvage operators, contracted with the USFS to purchase all salvageable trees which were to be cut and removed from what we will call the Meadow Creek unit. The Gibson-Swallow salvage operation involved cutting small diameter lodge pole pines to form poles and posts for sale in Nevada. The salvage contract, in Gibson's name, carried a termination date of October 30, 1978. However, the contract further provided that the "sale may terminate prior to above date due to slash piling." The Meadow Creek unit, where Gibson and Swallow were allowed to cut and remove trees, was included in the Hardy contract to be slash piled. The Hardys had no contractual obligation with Gibson and Swallow.

Gibson and Swallow worked the Meadow Creek unit for approximately twenty-four days and claimed they had many poles and posts cut and lined up in preparation for loading. On July 30, 1978, Gibson, Swallow and their crew left the Meadow Creek unit unattended and traveled to Nevada for a three-day weekend. On August 3, after completing work at his first location, Hardy proceeded to the Meadow Creek area and slash piled the unit where Gibson and Swallow had been working. The salvage operators returned to find that all salvageable material, including cut and piled posts and poles, had been destroyed by being bulldozed into large piles of debris for burning. The USFS offered Gibson and Swallow an alternative area to work, which they refused. Subsequently, Gibson and Swallow filed this action against the Hardys, seeking damages for the loss of their property.

Hardy first asserts that the salvage operators had "no justiciable interest" in the property that was destroyed. He relies on a provision of Gibson's salvage contract to support his argument. The provision states that "[t]itle to all timber included in this contract shall remain in the United States until it has been scaled or measured, paid for and removed from sale area." Hardy argues that this provision does not provide Gibson and Swallow an interest in the trees that had been standing or in the cut poles and posts because the material had not been removed, resulting in the title still vesting in the Forest Service. We find this contention to be without merit. It was established beyond dispute at trial that Gibson fully paid the USFS for the salvage on the Meadow Creek unit in advance. In spite of the printed contract language, no scale or measurement of the material had to be made before its removal by the salvage operators. The salvage contract gave Gibson and Swallow the right to cut and remove all salvageable material on the unit. They were prevented from doing this only by the destruction caused by Hardy. We hold that Gibson and Swallow had a sufficient interest to bring a cause of action for damages.

Hardy next argues that even if the salvage operators had a justiciable interest in the standing trees and in the cut material on the unit, that interest was inferior to Hardy's interest. This assertion is again based in part on Gibson's salvage contract with the USFS. A prospectus furnished by the USFS to Gibson and to other potential timber purchasers specifically stated: "The [salvage] sales will be terminated when [slash] piling commences on that specific unit. Slash piling will not be delayed by the pole salvage sales." (Emphasis original.) The contract itself stated "Sale may terminate prior to [the stated termination date] due to slash piling." It is undisputed that this language provided Hardy's slash piling operation with priority over the salvage operation. However, as we explain later, it does not necessarily follow that Hardy's slash piling contract gave him the right to arbitrarily terminate the rights Gibson and Swallow had acquired under their contract.

Pursuant to his contract, Hardy furnished the USFS with a work schedule which showed the proposed sequence of his slash piling operation on the various units he was to clear. The work schedule was by no means an inflexible condition of the contract, but it did set forth the order in which the USFS desired the slash piling to proceed on the several units. The evidence indicates that had Hardy followed this schedule he would not have moved onto the Meadow Creek unit until approximately August 27. Instead, as the trial court found, because "it suited his convenience," Hardy moved his equipment onto the Meadow Creek unit on August 3 and proceeded to "slash pile" the unit. One of the "general provisions" of Hardy's contract stated:

It will be [Hardy's] responsibility to plan his work in such a way that it will be completed in accordance with the established work progress plans and within the contract period.

The Contracting Officer [of the USFS] or his authorized representative may specify priority of work by items, units or

blocks within the bid item during the course of the contract. Such priorities specified will not be a cause for change in contract time or price.

Thus, we think it is clear that Hardy's contract did not give him an unqualified right to terminate Gibson and Swallows' salvage rights by simply moving his slash piling operation to their unit because "it suited his convenience."

 Hardy next asserts that he did not breach any duty to Gibson and Swallow and, therefore, was not negligent in destroying the trees, poles and posts. We recognize that negligent conduct and breach of contract are two distinct theories of recovery. "Ordinarily, breach of contract is not a tort, although a contract may create the circumstances for the commission of a tort." *Just's Inc. v. Arrington Construction Co.*, 99 Idaho 462, 468, 583 P.2d 997, 1003 (1978). Negligence arises out of some duty imposed by law, irrespective of any contract. *Taylor v. Herbold*, 94 Idaho 133, 483 P.2d 664 (1971). Therefore, the first issue to be resolved is whether there was a duty on the part of Hardy toward Gibson and Swallow.

 It has been established that "one owes the duty to every person in our society to use reasonable care to avoid injury to the other person in any situation in which it could be reasonably anticipated or foreseen that a failure to use such care might result in such injury." *Alegria v. Payonk*, 101 Idaho 617, 619, 619 P.2d 135, 137 (1980) (emphasis omitted), quoting *Kirby v. Sonville*, 286 Or. 339, 594 P.2d 818, 821 (1979). In addition, "[e]very person has a general duty to use due or ordinary care not to injure others, ... and to do his work, render services or use his property as to avoid such injury." *Whitt v. Jarnagin*, 91 Idaho 181, 188, 418 P.2d 278, 285 (1966). *See also* 57 AM.JUR.2d NEGLIGENCE § 50 (1971). In determining whether such duty has been breached by the allegedly negligent party, his conduct is measured against that of an ordinarily prudent person acting under all the circumstances and conditions then existing. *Nagel v. Hammond*, 90 Idaho 96, 408 P.2d 468 (1965).

Moreover, Hardy's contract incorporated the following general provision:

(a) The Contractor [Hardy] shall use every precaution necessary to prevent damage to public and private property....

(b) The Contractor shall be responsible for all damage to property and to persons, including third parties, that occur as a result of his or his agent's or employee's fault or negligence. The term *"third parties"* is construed to include employees of the Government.

Having established the duty of Hardy and the standard by which his conduct is to be judged, it must be determined whether that duty extends to Gibson and Swallow. Because this is an action in tort, the relevant questions are whether the duty was breached and whether the breach proximately caused actual damages to Gibson and Swallow. *Alegria v. Payonk, supra.* Hardy claims a breach of duty did not occur because Gibson-Swallow's salvage rights were subject to certain limitations, all relating to the condition that the slash pile operation had priority over the salvage operation. We have previously discussed the relevant contractual provisions and have held that, under their contract, Gibson and Swallow had an equitable interest in the poles and posts cut, but not removed from, the Meadow Creek unit.

 We must now turn to whether an ordinary prudent person acting in the same situation would have proceeded to slash pile the Meadow Creek unit under the circumstances facing Hardy. As previously mentioned, Hardy provided a work schedule to the Forest Service. A forest service official testified that this work schedule was created in part to accommodate the salvage operations. Based on this schedule, the Forest Service officials assured Gibson and Swallow on July 30 that the slash piling operation "was two-three weeks away." In fact, without informing anyone, Hardy commenced slash piling on the Meadow Creek unit on August 3. Har-

dy testified that he saw evidence of post and pole cutting going on. He noticed some trees cut and piled in the area and he noticed a campsite with a tent and trailer. He was aware that salvage operators were working in the general forest area. Further, Hardy testified that he could have driven an approximately fifteen minute drive to the Forest Service office to request a guide to his next scheduled work area. He did not do this as he felt it would unduly delay his operation. The undisputed evidence also showed that 100 yards away from the unit Gibson and Swallow were working was another unit to which Hardy could have moved. No salvage operation was going on there. There were several other units, also included in Hardy's contract, to which he could have moved without any significant delay to his own operation and without interference with any salvage operations.

■ Upon the facts of this case, it could be concluded that an ordinary prudent person would not have proceeded with the slash piling of the unit in question. Further, it appears from the facts of this case that Hardy could reasonably have foreseen that proceeding to slash pile the Meadow Creek unit would damage or destroy the poles and posts cut by the salvage operators. Therefore, Hardy's conduct was a proximate cause of the damage. We will not disturb the district court's finding of negligence.

Hardy finally contends that the court's award of damages was improper. The argument is, first, that Gibson and Swallow failed to mitigate their damages. The evidence shows that the USFS offered Gibson and Swallow another "comparable" area to salvage in place of the unit they lost. Gibson and Swallow gave several reasons why the offered area was not comparable. The district court found that "[t]hey looked it over and decided that it was inaccessible." The evidence also showed that the USFS offered them other areas as well which they did not examine. Thus, there are no clear findings as to whether the salvage

operators could have resumed their salvage operations at another location.

■ This uncertainty makes no difference as to the amount of damages suffered by the salvage operators for material they had *already cut.* Starting anew in another location would not reduce losses for material already produced. On the other hand, if the district court included in its calculation of damages some amount for the trees that were standing on the Meadow Creek unit when Hardy slash piled the unit, then those damages could have been mitigated by cutting trees in another area. Thus, the issue of mitigation of damages cannot be laid to rest until more definite findings are made.

■ ■ Hardy next contends that the award of damages is improper because it is unsupported by the evidence. Ordinarily, the measure of damages in tort is such as will compensate for loss suffered. *Beal v. Mars Larsen Ranch Corp.,* 99 Idaho 662, 586 P.2d 1378 (1978). The measure of damages for property which is totally destroyed is the value of the property at the time and place of its destruction. *Skaggs Drug Centers, Inc. v. City of Idaho Falls,* 90 Idaho 1, 407 P.2d 695 (1965). Market value is the ordinary measure of direct property loss. *Bratton v. Slininger,* 93 Idaho 248, 460 P.2d 383 (1969). Gibson and Swallow presented evidence of the market price of the poles and posts in Nevada.

We assume, but we are not certain, that the district court awarded damages only for the posts and poles that were cut and lying on the unit either in stacks or scattered about the ground. Gibson and Swallow estimated the number of poles and posts destroyed by the Hardys. Unfortunately, even in the plaintiffs' own testimony there were significant inconsistencies as to the number of poles and posts that were cut and were ready either to be "snaked" to the road or were laid out along the road ready for loading. Of course, Hardy presented other evidence contradicting the plaintiffs' testimony, and it is for the trial court to weigh the evidence. *Bengoechea v. Bengoechea,* 106 Idaho 188, 677 P.2d 501 (Ct.App.1984).

However, the district court made insufficient findings and conclusions on the award of damages. From the record it cannot be determined how the amount of damages was determined by the district court. Without sufficient findings, we are unable to determine whether the judge's award is supported by the evidence or whether the damages were correctly calculated as a matter of law. For example, the findings indicate, but do not clearly establish, that there were "5,000 cut and piled poles and posts" on the property when Hardy commenced his slash piling. This figure would yield nowhere near the amount of damages awarded by the court. In calculating the amount of damages the court should have deducted from the total market value of the cut material the expenses that otherwise would have been incurred for all labor needed to move the material to the roads where it was to be loaded, the labor to load, transport to markets in Nevada and off-load the material as well as hauling expenses.

This case was tried and decided under theories of negligence. The court determined that both parties were negligent. The court then compared the fault of each party and determined that Hardy was seventy-five percent responsible for plaintiffs' loss and plaintiffs were twenty-five percent responsible. These determinations are not challenged on appeal by either party. Therefore, the district judge on remand may reduce plaintiffs' actual damages by the percentage of plaintiffs' negligence.

In the event that the district judge who conducted the trial, but who has since retired, is unable to make the necessary findings to conclude this case, we direct that a new trial be conducted on the issue of damages.

The judgment of the district court is affirmed in part and vacated in part. Costs to appellants Hardy. No attorney fees awarded.

WALTERS, C.J., and BURNETT, J., concur.