118 P.3d 86

**Patricia SORENSEN, Plaintiff–Respondent,**

v.

**SAINT ALPHONSUS REGIONAL MEDICAL CENTER, INC., an Idaho nonprofit corporation, and Trinity Health Corporation, an Indiana nonprofit corporation, Defendants–Appellants.**

**No. 30476.**

Supreme Court of Idaho, Boise, February 2005 Term.

June 24, 2005.

Rehearing Denied Aug. 16, 2005.

756

Givens Pursley, LLP, Boise and Paul Hastings Janofsky & Walker, LLP, Los Angeles, California, for appellants Saint Alphonsus

Regional Medical Center and Trinity Health Corporation. Robert F. Walker argued.

Rossman Law Group, PLLC, Boise, for respondent. Eric S. Rossman argued.

SCHROEDER, Chief Justice.

This case involves claims by Patricia Sorensen (Sorensen) that Saint Alphonsus Regional Medical Center, Inc. (St.Al's) and Trinity Health Corporation (Trinity) breached contractual, fiduciary and certain tort duties to her in providing her the early retirement benefits to which she was entitled as an employee of St. Al's. The district court granted summary judgment in favor of Sorensen on her contract, fiduciary duty and negligence claims. After a trial, the jury returned a verdict in favor of Sorensen in the amount of $83,750.72, $50,000 of which was attributable to emotional distress damages. The district court denied St. Al's and Trinity's post-trial motions and granted Sorensen's motion for costs and attorney fees. St. Al's and Trinity appeal.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

Sorensen worked as a registered nurse for St. Al's from 1977 until March of 2002. In December of 1999, she met with the Human Resource Benefits Specialist for St. Al's to discuss retirement options. Sorensen participated in a retirement benefit plan (the Holy Cross Retirement Program) offered by St. Al's, through St. Al's then parent corporation, Holy Cross Health Systems. In 2000, Holy Cross Health Systems merged with Mercy Health Systems to create Trinity. Trinity developed a new retirement plan in 2002. However, Sorensen's rights with respect to her retirement benefits continued to be governed by the language of the Holy Cross Retirement Plan. The actual Plan document was kept in Trinity's home offices in Indiana. The document available for review locally was entitled "The Holy Cross Retirement Plan, Eligibility, Service, Distributions, Participation, Vesting, Benefits, Retirement" (Summary Plan). Relying on the language of the Summary Plan, the Benefits Specialist informed Sorensen that she would be eligible to receive early retirement benefits if she reduced her work schedule to less than 960 hours per year. Sorensen was an employee at will.

In May of 2000 Sorensen elected to receive her early retirement benefits and reduced her work schedule to less than 960 hours per year. She received the benefits and worked part-time until March of 2002. Early in 2002 Sorensen's supervisor told her that she needed to meet with the Benefits Specialist to discuss possible changes to her early retirement benefits. Sorensen met with the Benefits Specialist in February and was given a letter from Trinity. The letter informed Sorensen that she could not work part-time and continue receiving early retirement benefits based on Trinity's belief that Sorensen's arrangement and similar arrangements threatened the tax-exempt status of the retirement plan. Trinity required Sorensen to elect one of two options: 1) suspend the monthly early retirement benefits and continue working; or 2) terminate employment for four months with St. Al's and continue receiving the early retirement benefits. According to an agreement with the IRS, Sorensen could return to the part-time employment after the four months. Sorensen was required to make her election by March 31 or she would be deemed to have elected option one. Sorensen terminated her employment with St. Al's on March 31, 2002.

In May of 2002 Sorensen filed suit against St. Al's and Trinity (collectively referred to as Trinity unless otherwise noted) for breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duties, negligence, negligent and/or intentional infliction of emotional distress, bad faith and fraud. The parties filed cross motions for summary judgment. The district court determined that: (1) St. Al's was a party to the contract and a proper party in this case; (2) Indiana law governed the interpretation of the Plan, but the tort claims were governed by Idaho law; (3) the Summary Plan governed as the document relied upon by Sorensen when she made her decision to accept early retirement benefits; (4) the Summary Plan language unambiguously

enabled Sorensen to continue working part-time and still receive early retirement benefits; and (5) Trinity was estopped from unilaterally changing the agreement Sorensen had with it based on the Summary Plan language.

The district court granted summary judgment in favor of Sorensen on her breach of contract claim, making the following determinations: (1) Trinity failed to take reasonable measures to ensure that Sorensen obtained the benefit of the agreement she had with Trinity under the Summary Plan. Consequently, Trinity breached the implied covenant of good faith and fair dealing; (2) the Benefits Specialist failed to provide complete and accurate information to Sorensen, a Plan beneficiary, thus establishing a claim for breach of fiduciary duties; (3) concerning the fraud claim, genuine issues of material fact existed as to whether Trinity deliberately knew the falsity of the information provided to Sorensen; (4) Trinity had a duty to provide Sorensen with accurate information that was separate from the duties it had to her under the contract, and the economic loss rule was not applicable in this case since there was a special relationship between Sorensen and Trinity. The district court granted summary judgment in favor of Sorensen on her negligence claim; (5) there was no ruling on the intentional infliction of emotional distress claim, but Sorensen did not raise the issue again at trial or on appeal; (6) neither party was granted summary judgment on the claim for negligent infliction of emotional distress; (7) Trinity's motion to dismiss Sorensen's bad faith claim was granted; and (8) whether or not Sorensen failed to mitigate her damages was a question of fact for the jury.

After trial on the damages issue, the jury returned a verdict in favor of Sorensen for $83,750.72, $50,000 of which was attributable to emotional distress damages. Trinity filed a motion for judgment notwithstanding the verdict and a motion for a new trial. The district court ruled that a causal connection had been established between Trinity's conduct and Sorensen's lost wages. Further, Idaho's Workers' Compensation Law did not apply in this case, and Sorensen was not required to put on medical testimony to support her emotional distress claim where she was able to testify that she suffered from headaches, gastric problems, insomnia and panic attacks.

The district court refused to grant the motion for judgment notwithstanding the verdict and the motion for a new trial. The district court awarded costs and attorney fees to Sorensen under Idaho Code (I.C.) §§ 12–120(3) and (1). An Amended Judgment was entered, awarding Sorensen damages in the amount of $83,750.72, $1,210.27 in costs as a matter of right, $1,792.00 in discretionary costs and $40,383.00 in attorney fees for a total judgment of $127,135.99. Trinity appealed.

## II.

## TRINITY'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT SHOULD HAVE BEEN GRANTED

Trinity's motion for judgment notwithstanding the verdict involved determinations by the district court prior to trial in motions for summary judgment which bound the jury in its determinations and decisions made during the trial itself. It is necessary to determine the propriety of the pre-trial rulings as well as the evidence at trial.

### A. Standard of Review

■■■ The standard of review on appeal from an order granting summary judgment is the same standard as that used by the district court in ruling on the motion for summary judgment. *Tolley v. THI Co.,* 140 Idaho 253, 259, 92 P.3d 503, 509 (2004). Summary judgment is proper where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.;* I.R.C.P. 56(c). The facts will be liberally construed and all inferences will be drawn in favor of the non-moving party. *Id.* The fact that parties have filed cross-motions for summary judgment does not change the standard employed by the court in reviewing whether or not issues of material fact exist. *Intermountain Forest Management, Inc. v. Louisiana Pacific Corp.,* 136 Idaho 233, 235, 31 P.3d 921, 923

(2001). Each party's motion must be evaluated on its own merits. *Id.*

### B. Trinity, not Sorensen, was entitled to summary judgment on Sorensen's breach of contract and breach of the implied covenant of good faith and fair dealing claims.

The district court determined that the Summary Plan controlled the resolution of this case and that the Summary Plan conflicted with the Plan. Further, Trinity was estopped from unilaterally changing the pension benefits after Sorensen had vested in those benefits. Based on this analysis, the district court granted summary judgment in favor of Sorensen on her breach of contract and breach of the implied covenant of good faith and fair dealing claims.

1) The Breach of Contract claim.

 The first issue to be resolved in any breach of contract claim is defining what the contract is between the parties. The Plan was the contract between Sorensen and Trinity, not the Summary Plan. The Summary Plan states in several places that the Plan has the final say on any issue relating to an employee's retirement benefits. The Summary Plan states, "The descriptions in this booklet are based on the plan's legal document which has the final word on any question about how the plan works." Further, "Your rights are governed solely by the official plan document. It is important, therefore, to ask questions and get clarification on any matters about which you are uncertain. A copy of the plan document is available for you upon request and without charge from your Benefits Coordinator/Human Resource Department." The Plan expressly required a full termination of employment prior to receiving early retirement benefits.

The Summary Plan was not the contract between Sorensen and Trinity. Trinity's actions are in accordance with the language of the Plan and cannot form the basis for a breach of contract action.

 ERISA does not apply in this case because the pension plan at issue is a qualified church plan and is therefore exempt from ERISA. However, the parties agree that ERISA principles, such as protecting benefits in which an employee has vested and the protection of plan assets, are relevant to this case. The parties also agree that some case law interpreting ERISA holds that where a Summary Plan description and a Plan conflict, the Summary Plan will control if the employee has relied on the Summary Plan. *Heidgerd v. Olin Corp.*, 906 F.2d 903 (2nd Cir.1990); *Brush Wellman, Inc. v. Montes*, 295 F.Supp.2d 785 (N.D.Ohio 2003). However, a summary plan description is a requirement for employee benefit plans governed by ERISA. 29 U.S.C. § 1022. The Summary Plan in this case was not required. It was voluntarily created for employees by Trinity. The ERISA cases elevating the Summary Plan over the Plan document are less persuasive. Again, the Summary Plan pointed out in several places that the official Plan controlled an employees' eligibility for benefits.

2) The claim of equitable estoppel.

 Four elements are required in order to establish a claim for equitable estoppel: 1) there must be a false representation or concealment of a material fact made with actual or constructive knowledge of the truth; 2) the party asserting estoppel did not and could not have discovered the truth; 3) there was intent that the misrepresentation be relied upon; and 4) the party asserting estoppel relied upon the misrepresentation or concealment to his or her prejudice. *Willig v. State, Dept. of Health & Welfare*, 127 Idaho 259, 261, 899 P.2d 969, 971 (1995); *Tommerup v. Albertson's, Inc.*, 101 Idaho 1, 5, 607 P.2d 1055, 1059 (1980). "All of the above factors are of equal importance and there can be no estoppel absent any of the elements." *Tommerup*, 101 Idaho at 6, 607 P.2d at 1060.

Trinity reserved the right to make changes to the pension plan and to correct mistakes. The Summary Plan states that, "Holy Cross Resources, Inc. reserves the right to terminate any kind of benefit not protected by law, or change or end this plan at any time, in its sole discretion." It cannot be said that Trinity made a "false representation or concealment" by attempting to enforce the language

of the Plan when it discovered the Summary could be interpreted to incorrectly state the Plan's eligibility requirements for early retirement benefits. Sorensen was on notice that her retirement benefits were governed by the Plan and subject to modification.

There is a flaw in the conclusion that Sorensen reasonably relied to her detriment on any representations made by Trinity. The interpretation of the Summary Plan resulted in a benefit flowing to Sorensen, i.e., the ability to receive early retirement benefits while continuing to work part-time. She was not entitled to this benefit under the Plan. She received a benefit, not a prejudice, by misinterpretation of the Plan. Sorensen was not prejudiced by Trinity's action and is unable to establish the fourth element of equitable estoppel.

**C. Sorensen was not entitled to summary judgment on the breach of contract claim.**

■ Trinity has never asked that Sorensen return the early retirement benefits she received for nearly two years. Trinity seeks to enforce the terms of the Plan and correct the error it made in the Summary Plan. Trinity's desire to adhere to the terms of the contract between the parties, and in doing so protect the Plan from adverse action by the IRS, does not breach that contract. The summary judgment in favor of Sorensen on her breach of contract claim was improper. Summary judgment should have been granted in favor of Trinity. Sorensen's claim of breach of the implied covenant of good faith and fair dealing fails since that claim depended for its existence on the success of Sorensen's contract claim.

**D. The district court erred in granting summary judgment in favor of Sorensen on her breach of fiduciary duty and negligence claims because she did not suffer damage.**

■ The district court granted summary judgment in favor of Sorensen on claims for breach of fiduciary duty and negligence. "To establish a claim for breach of fiduciary duty, plaintiff must establish that defendants owed plaintiff a fiduciary duty and that the fiduciary duty was breached." *Tolley v. THI Co.*, 140 Idaho 253, 261, 92 P.3d 503, 511 (2004). In cases governed by ERISA, it is clear that a plan administrator is a fiduciary to plan participants and has a duty to provide full and accurate information to them. *Abbruscato v. Empire Blue Cross & Blue Shield*, 274 F.3d 90, 102–03 (2nd Cir.2001). The Holy Cross Retirement Plan is a church plan and exempt from ERISA, but both the Plan and the Summary Plan refer to fiduciary obligations to the plan and to participants. Section 11.4 of the Plan, beginning at page 43, states:

> Neither the Plan Administrator, Plan Sponsor, Employer, Trustees, or any agent thereof or other party charged with responsibility under the Plan shall be liable for its own act, or failure to act, unless such individual or organization has caused actual loss to the Plan or to a Participant or beneficiary by failing properly to discharge a fiduciary duty or responsibility expressly imposed upon such individual or organization.

The Summary Plan also states, "[t]he people who are responsible for the operation of the Retirement Plan are called 'fiduciaries' of the plan. They have a duty to operate your plan prudently and in the interest of you and other plan participants and beneficiaries." There was a fiduciary relationship between Trinity and Sorensen.

Arguably Trinity breached a fiduciary duty to Sorensen. Trinity created the Summary Plan, which conflicted with the Plan, and interpreted the Summary Plan to provide early retirement benefits to Sorensen while she continued to work part-time. Trinity failed to provide Sorensen with complete and accurate information about her retirement benefits by drafting a Summary Plan that seemed to allow her to continue working part-time and then providing her with benefits to which she was not entitled for two years. The fact is she received more than she was entitled to receive. She was offered the option to lay off work for four months and then return to work part-time with her retirement benefits. She was an employee at will who could have been terminated in any event. Any loss of money during that four

months was more than offset by the two years of benefits she received as a consequence of the misinformation she was provided.

While it is not dispositive of Sorensen's right to recover, it is clear that Trinity had the obligation to proceed as it did once the mistake was discovered. It has a fiduciary duty to all participants in the Plan. Failure to rectify the error would have endangered the qualified status of the Plan with the IRS which would adversely impact other beneficiaries in violation of Trinity's duty to protect the Plan.

 With respect to Sorensen's negligence claim, summary judgment in her favor was also improper. In *Gibson v. Hardy,* 109 Idaho 247, 250, 706 P.2d 1358, 1361 (Ct.App. 1985), the Court of Appeals noted that, "[n]egligence arises out of some duty imposed by law, irrespective of any contract." *Citing Taylor v. Herbold,* 94 Idaho 133, 483 P.2d 664 (1971). The court continued by stating that, " 'one owes the duty to every person in our society to use reasonable care to avoid injury to the other person in any situation in which it could be reasonably anticipated or foreseen that a failure to use such care might result in such injury.' " *Id.* (quoting *Alegria v. Payonk,* 101 Idaho 617, 619, 619 P.2d 135, 137 (1980) (emphasis omitted)). In determining whether a party is negligent, his or her conduct is judged against that of an ordinarily prudent person acting under the same conditions and circumstances. *Id.*

Trinity owed a duty to Sorensen that existed outside of their contract to use reasonable care in providing her with accurate information regarding her retirement benefits. It was negligent to provide Sorensen with inaccurate information in the Summary Plan and in the Benefits Specialist's interpretation of the Summary Plan. However, again, she received more benefits than those to which she was entitled. She was an employee at will. She had no contractual right to employment for the four-month period. The negligence was not a proximate cause of damage.

Sorensen had choices. She could terminate her employment with St. Al's for a period of four months and receive the retirement benefits, after which time she could return to part time employment with retirement benefits. She could work full time without retirement benefits for approximately a year and then work full time, part time, or not at all and receive greater retirement benefits. After receiving benefits to which she was not entitled for two years it cannot be said that Trinity's negligence caused her damage.

### E. The Jury Verdict—negligent infliction of emotional distress.

#### 1. Standard of Review

 When it appears to the reviewing court that the verdict is either not supported by substantial and competent evidence—or is against the clear weight of the evidence or, in other words, if upon its review of the evidence in the record the reviewing court determines that reasonable minds could not differ on issues of fact—then those issues become questions of law upon which the court may freely rule. *Boel v. Stewart Title Guar. Co.,* 137 Idaho 9, 12, 43 P.3d 768, 771 (2002).

 What remains in this case is the claim for the negligent infliction of emotional distress. The initial act of misadvising Sorensen of her retirement/employment rights did not cause her emotional distress. It was the subsequent act of attempting to correct that misinformation. Sorensen testified about insomnia, anxiety, headaches and gastric problems. The fundamental problem in this claim is that Sorensen was an employee at will who could be terminated at any time with or without cause absent a violation of public policy. No violation of public policy is implicated in this case. She had no guarantee of part-time employment while she received retirement benefits. She cannot obtain emotional distress damages for being offered the option of leaving employment for four months when St. Al's could simply terminate her with no explanation. It appears that after the mistake was discovered she was actually offered more than she was ever entitled to—retirement and a job after a four-month break in employment with St. Al's. She cannot convert an employment at

will into a guarantee of employment and obtain emotional distress damages for being told she needed to terminate employment with St. Al's for four months to continue receiving early retirement benefits.

## III.

## CONCLUSION

The judgment entered in the district court is reversed. Trinity is awarded costs. No attorney fees are allowed.

Justices TROUT and EISMANN concur.

Justice JONES, dissenting.

Because the district court properly granted Sorensen's motion for summary judgment and denied Trinity's motion for judgment notwithstanding the verdict, I respectfully dissent. In my view, Trinity did cause substantial damage to Sorensen by disrupting her retirement plans, which were made with the active advice and assistance of Trinity. The Summary Plan is the "contract" between these parties because Trinity is estopped from asserting otherwise. Trinity breached the contract, including the covenant of good faith and fair dealing contained therein. Further, Trinity is responsible to Sorensen for breach of fiduciary duty and negligence.

### A. The District Court Properly Granted Summary Judgment in Favor of Sorensen on Her Breach of Contract Claims.

The Summary Plan is a 29–page document, which was apparently prepared by Trinity to summarize and explain in layman's terms the more complicated language of the 60–page Plan. A copy of the Summary Plan was available at St. Al's and was the document used for counseling prospective retirees at the time Sorensen made her retirement decision. It is true that the first page of the Summary Plan states, "The descriptions in this booklet are based on the plan's legal document which has the final word on any question about how the plan works." However, it continues, "If you would like more information after reading this booklet, please see your Benefits Coordinator/Human Resource Department."

At page 21, the Summary Plan helpfully suggests "your Benefits Coordinator/Human Resource Department" as an information source for retirement planning. At page 26, which discusses the "Official Plan Document", the Summary Plan states:

This booklet describes the main provisions of the plan, but not every detail is included. Your rights are governed solely by the official plan document. *It is important, therefore, to ask questions and get clarification on any matters about which you are uncertain.* A copy of the plan document is available for you upon request and without charge from your Benefits Coordinator/Human Resource Department."

(Emphasis added). St. Al's did not have a copy of the Plan and there is no evidence that a copy was offered to Sorensen. The Plan was inconveniently located at Trinity's home office in Indiana.

Sorensen did want to know whether she could receive early retirement benefits while continuing to work on a part-time basis. She followed the directive in the Summary Plan and sought advice from the Benefits Specialist at St. Al's. She was told she could, based on the following language at page 10 of the Summary Plan:

You can retire as early as age 55 with five (5) years of vesting service and still receive a benefit from the plan. If you retire early, you can choose to have payments start as soon as you retire or at some later time.

If benefits begin before your Social Security Retirement Age, they will be reduced to account for a longer payment period. The size of the reduction is determined by a schedule and depends on your Social Security Retirement Age and the age at which you choose to have benefits begin. If you continue to work after benefits begin but before you reach your Social Security Retirement Age, your benefits from the plan will continue; however, once you work 960 hours in a calendar year, plan benefits will stop. They'll resume the next year, or when you reach Social Security Retirement Age.

The Benefits Specialist informed Sorensen that she could receive early retirement benefits if she reduced her work schedule to less than 960 hours per year. Sorensen followed this advice, took early retirement in May of 2000, and received early retirement benefits while working the reduced schedule until early in 2002. At that time she was informed that the above language of the Summary Plan was in error and that corrective action was necessary.

Based on the foregoing facts, the district court granted summary judgment in Sorensen's favor on her breach of contract claim. The court analyzed the issue as follows:

The Court will conclude that the Summary Plan is the contractual provision that the Plaintiff had a right to rely upon. Secondly, the Summary Plan is in conflict with the Plan. In reviewing pages 10 and 18 of the Summary Plan, the language is very clear and unambiguous that the Plaintiff was eligible to receive early retirements and continue her employment with the same employer. The Plan itself does delineate a different standard that is inconsistent with the Summary Plan.

Based on the Court's finding that the Summary Plan is the controlling plan, clearly there has been a unilateral change in the pension plan by the Defendants. The Court will further find that the estoppel assertion by the Plaintiffs is not a separate claim for relief, as outlined in *Iron Eagle Development v. Quality Design Systems Inc.* 138 Idaho 487, 65 P.3d 509, but rather is a contractual claim as propounded as set forth in *Medical Service[s Group] Inc.* v. *Boise Lodge 310*, 126 Id. 90, 878 P.2d 789, and thus appropriate for the Court to consider the estoppel assertion regarding the enforcement of an express contract.

The Court must conclude from the undisputed facts that the Defendants did unilaterally change the pension benefits after the Plaintiffs acceptance of those benefits, that the Plaintiff performed the conditions of the offer, and that the pension benefits vested thus creating a binding unilateral contract which could not be modified without the Plaintiffs consent.

In this case the Defendants made false representation or concealed a material fact, the Defendant's had active or constructive knowledge of the truth, that the Plaintiff did not and could not have discovered the truth, that the false representations were made to be relied upon by the Plaintiff and the Plaintiff acted upon the representations to her detriment.

The district court's conclusion was correct and its analysis was for the most part sound. There is a conflict between the Summary Plan and the Plan as to whether an employee can apply for and receive early retirement benefits while continuing to work at a reduced schedule of less of 960 hours. The Plan says no, while the Summary Plan says yes. Page 18 of the Summary Plan, cited by the district judge, says, "If you return to or continue to work after your pension payments begin, you may have your pension payments stopped if you choose." The language of the Summary Plan is unambiguous in stating that a person can continue working at a reduced schedule of under 960 hours per year while receiving early retirement benefits. And, equitable estoppel does result in the Summary Plan being the plan that controls the rights and obligations of these parties. The district court's discussion as to how this result obtains is somewhat murky.

There is no question but that the Plan is the document that sets out the retirement rights and obligations between Trinity and its subsidiaries, on the one hand, and their employees, on the other hand. In the event of a conflict, the Plan prevails over inconsistent provisions of the Summary Plan. However, as a result of the application of the doctrine of equitable estoppel, Trinity may not assert that the Plan controls in this particular case. Equitable estoppel does not overrule or do away with the Plan; it merely prevents Trinity from asserting it in this case.

This Court explained how equitable estoppel works in *Twin Falls Clinic & Hospital Bldg. v. Hamill,* 103 Idaho 19, 644 P.2d 341 (1982). After noting that estoppel was so deeply embedded in Anglo–American jurisprudence that its application was just assumed, the Court applied it to estop a party

from asserting a statute of limitations. The Court made it clear that "estoppel does not 'extend' a statute of limitations, but rather prevents a party from pleading and utilizing the statute of limitations as a bar, although the time limit of the statute of limitations may have run." *Id.* at 21–22, 644 P.2d at 343–44. In other words, estoppel does not change a person's legal status but merely prevents the person from asserting such status under specified conditions, such as when the party has changed position to the detriment of another or acted so as to mislead another party.

With regard to its recitation of the elements of equitable estoppel, the district court was for the most part correct. The decisions of this Court have not been entirely consistent in outlining the elements of equitable estoppel. In *John W. Brown Properties v. Blaine County*, 138 Idaho 171, 176, 59 P.3d 976, 981 (2002), the Court outlined the elements as follows:

> To prevail on a claim of equitable estoppel, it must be shown that a party makes (1) a false representation or concealment of a material fact with actual or constructive knowledge of the truth; (2) that it is made with the intent that it be relied upon; and (3) that the party asserting estoppel relies on it to the party's prejudice.

The recitation in *City of Sandpoint v. Sandpoint Ind. Hwy.*, 126 Idaho 145, 151, 879 P.2d 1078, 1084 (1994) is essentially the same. However, in *Young Electric Sign Co. v. State Ex Rel., Winder*, 135 Idaho 804, 810, 25 P.3d 117, 123 (2001), the Court stated:

> The elements of equitable estoppel are:
>
> (1) a false representation or concealment of a material fact with actual or constructive knowledge of the truth, (2) the party asserting estoppel did not know or could not discover the truth, (3) the false representation or concealment was made with the intent that it be relied upon, and (4) the person to whom the representation was made or from whom the facts were concealed, relied and acted upon the representation or concealment to his [or her] prejudice.

*Regjovich v. First Western Invest.*, 134 Idaho 154, 158, 997 P.2d 615, 619 (2000).

The Idaho Court of Appeals, on the other hand, generally utilizes elements recited by this Court in *Tew v. Manwaring*, 94 Idaho 50, 53, 480 P.2d 896, 899 (1971), which include three elements from the standpoint of the party to be estopped and three elements from the standpoint of the party claiming the estoppel. *See, Treasure Valley Gastroenterology Specialists, P.A. v. Woods*, 135 Idaho 485, 490, 20 P.3d 21, 26 (Ct.App.2001).

Whether utilizing the three-element test articulated in *John W. Brown Properties* or the four-element test in *Young Electric Sign Co.*, the evidence in the record at the time of the hearing on the motions for summary judgment dictated the determination that was made by the district court in Sorensen's favor. There is no doubt but what she was advised she could continue to work part-time while receiving early retirement benefits. The Summary Plan, which was drafted by or on behalf of Trinity, said so. The Benefits Specialist, who Trinity referred her to in order to answer questions about the Plan, told her so. It turns out that these representations were a misrepresentation of the actual provisions of the Plan, but Sorensen had no reason to know that. She had no means of determining what the fine print of the contract was because the fine print was located almost two thousand miles away in Trinity's home office in Indiana. Sorensen did follow the directive in the Summary Plan to consult with the benefits coordinator on staff at her employer's human resource department in order to get clarification as to the Plan's provisions. With such assurances as Sorensen received, without having an actual Plan reasonably available, a reasonable person would not find it necessary to consult the provisions of a document that was certainly less understandable for a layman. Sorensen reasonably relied on the language and advice that was provided to her by Trinity, all to her consequence detriment.

The majority determines that Sorensen sustained no damage as a result of the misinformation provided by Trinity. The jury obviously determined otherwise. The difference between the viewpoints can possibly be explained by their different perspectives. The majority focuses primarily on the two-year

period in which Sorensen was working part-time while receiving early retirement benefits. Since it appears that she may have come out ahead dollar-wise during the period in question, the majority concludes that she was not prejudiced and is therefore unable to establish the fourth element of equitable estoppel. The jury appears to have taken a longer-term view of the situation. No decision is likely to cause more anguish for the average person than when and how to retire. Trinity recognizes this, stating in the Summary Plan: "A successful retirement depends a lot on what you do now. In fact, planning for retirement has never been more important or worthwhile." This is particularly so when a person contemplates early retirement, since they will generally buy into a reduced retirement benefit that will exist during the entirety of their benefit period, as was the situation here. Sorensen opted for the reduced early retirement benefit, based on the information she received and had a right to rely upon from Trinity. Had the "mistake" been discovered earlier, perhaps the problem could have been alleviated. However, it went on for a period of two years, during which Sorensen settled into her retirement plan. During the ensuing two years, Trinity had the means to know that she had both continued to work, albeit on a reduced schedule, and was receiving early retirement benefits. After two years of her comfortable retirement situation, her world was shattered by Trinity's revelation that it had made an unfortunate mistake. Regardless of how one looks at the situation, Sorensen will continue to get a reduced retirement benefit and she will be unable to carry out the plan of working part-time until actual retirement, much to her detriment.

The district court also properly ruled that Trinity had breached the covenant of good faith and fair dealing, which is an implied provision of the contract. Trinity has deprived Sorensen of a benefit under the contract—the ability to take advantage of the language at page 10 of the Summary Plan, allowing her to receive early retirement benefits while continuing to work a part-time schedule of less than 960 hours per year.

Even if one were to conclude that Trinity had breached neither the contract nor the implied covenant of good faith and fair dealing, there would be no ground to grant summary judgment in favor of Trinity, as the majority proposes. Trinity would not automatically be entitled to summary judgment, just because Sorensen's summary judgment on the contract issues is determined to be unwarranted. There are facts in the record, and inferences properly to be drawn from them, that support all of the elements of Sorensen's contract claims and, at minimum, she is entitled to have those claims determined by a jury.

**B. The District Court Properly Granted Summary Judgment In Favor Of Sorensen On Her Breach of Fiduciary Duty And Negligence Claims.**

The district court properly ruled that Sorensen established valid claims for breach of fiduciary duty and negligence. "To establish a claim for breach of fiduciary duty, plaintiff must establish that defendants owed plaintiff a fiduciary duty and that the fiduciary duty was breached." *Tolley v. THI Co.,* 140 Idaho 253, 261, 92 P.3d 503, 511 (2004). In cases governed by ERISA, it is clear that a plan administrator is a fiduciary to plan participants and has a duty to provide full and accurate information to them. *Abbruscato v. Empire Blue Cross & Blue Shield,* 274 F.3d 90, 102–03 (2d Cir.2001). Here, though the Holy Cross Retirement Plan is a church plan and exempt from ERISA, both the Plan and the Summary Plan refer to fiduciary obligations to Plan participants. The Summary Plan states, "The people who are responsible for the operation of the Retirement Plan are called 'fiduciaries' of the plan. They have a duty to operate your plan prudently and in the interest of you and other plan participants and beneficiaries." Therefore, based on the policies articulated in ERISA cases and the language of the plan documents, the district court properly held that there was a fiduciary relationship between Trinity and Sorensen.

The remaining issue is whether or not Trinity breached its fiduciary duty to Sorensen. Trinity created the Summary Plan,

which conflicted with the Plan, and interpreted the Summary Plan to provide early retirement benefits to Sorensen while she continued to work part-time. Trinity provided the early retirement benefits to Sorensen for almost two years before it determined that the Plan language did not authorize Sorensen's receipt of the benefits without ever terminating her employment. St. Al's Benefits Specialist was designated by Trinity as the person with the responsibility of advising employees about retirement options. Retirement is a life-changing event, and Sorensen relied on the information provided by the Benefits Specialist in making important decisions about her retirement. Trinity failed to provide Sorensen with complete and accurate information about her retirement benefits by drafting a Summary Plan that would allow her to continue working part-time while receiving early retirement benefits. Sorensen testified that, during the nearly two years she worked part-time and received early retirement benefits, she was able to maintain a certain standard of living. Forcing Sorensen to choose between the two options of continuing to work and suspending benefits or terminating employment and continuing to receive benefits, when she was never informed that she would have to make such a decision, put her in an untenable position. Trinity breached its fiduciary duty to Sorensen because it failed to provide her with accurate information regarding her receipt of benefits. Summary judgment in favor of Sorensen on this claim was proper.

With respect to Sorensen's negligence claim, summary judgment in her favor was proper for reasons similar to those supporting her breach of fiduciary duty claim. In *Gibson v. Hardy*, 109 Idaho 247, 250, 706 P.2d 1358, 1361 (Ct.App.1985), the Court of Appeals noted that, "[n]egligence arises out of some duty imposed by law, irrespective of any contract." *Citing Taylor v. Herbold*, 94 Idaho 133, 483 P.2d 664 (1971). The court continued, " 'one owes the duty to every person in our society to use reasonable care to avoid injury to the other person in any situation in which it could be reasonably anticipated or foreseen that a failure to use such care might result in such injury.' " *Id.* (quoting *Alegria v. Payonk*, 101 Idaho 617, 619 P.2d

135, 137 (1980) (emphasis omitted)). This is especially so where a party takes it upon itself to perform an act for the benefit of another. There is a duty to perform in a non-negligent manner. *Bowling v. Jack B. Parson Companies*, 117 Idaho 1030, 1032, 793 P.2d 703, 705 (1990). Here, Trinity took it upon itself to counsel Sorensen on an important life decision. It had the duty to provide accurate information. Finally, in determining whether a party is negligent, his or her conduct is judged against that of an ordinary prudent person acting under the same conditions and circumstances.

Here, Trinity owed a duty to Sorensen that existed outside of their contract to use reasonable care in providing Sorensen with accurate information regarding her retirement options and benefits. This duty was breached when Trinity failed to provide Sorensen with accurate information, both through the terms of the Summary Plan and through the interpretation of the Plan provided by the Benefits Specialist. Trinity's breach of duty was the proximate cause of damage to Sorensen in that (1) Sorensen was forced to choose between continuing her employment and suspending benefits or terminating employment to continue receiving benefits, (2) she does not now have the ability to decide whether or not to opt for a reduced or full retirement benefit, and (3) her retirement plan was disrupted. If Trinity had provided Sorensen accurate information in the first place, Sorensen would never have been in the position she was in 2002 where she had grown accustomed to a certain standard of living afforded to her from her part-time schedule and early retirement benefits. Trinity's negligence resulted in emotional distress and economic loss. In short, the district court's grant of summary judgment in favor of Sorensen on her negligence claim was appropriate and should be affirmed.

It is the majority's view that the summary judgment in favor of Sorensen on the breach of fiduciary duty and negligence claims should be reversed. Although the majority indicates that the evidence failed to establish a necessary element of both claims, i.e. damages, it isn't indicated whether the matter is to be remanded for trial of these issues. There are facts, and inferences to be drawn from those facts, to show Sorensen did sus-

tain damages that were a result of the breach of fiduciary duty and negligence. At minimum, the issues should be remanded for trial.

### C. The Jury Award Is Sustained By the Evidence.

The jury heard and considered all evidence presented by the parties, including issues relating to mitigation of damages, and rendered an award of $33,750.72 for lost wages and $50,000 for emotional distress. The award is supported by substantial and competent evidence and should be sustained.

The jury considered evidence that Sorensen had worked at St. Al's for 25 years and that she had no guarantee of re-employment with St. Al's or of getting her same wages if reemployed. The jury had ample evidence to consider regarding the damage issue, including the issue of whether Sorensen mitigated her damages. The jury may have concluded that she acted reasonably with regard to mitigation by accepting early Social Security benefits rather than accepting either of the two alternatives proposed by Trinity. It is not clear that Sorensen would have had the ability under either of the options to plan her retirement with a clean slate—to determine whether or not to opt for either reduced benefits or full benefits. It is clear that she could never implement the plan that she had intended to pursue two years earlier.

The jury's verdict of $50,000 for emotional distress should also be upheld because it is supported by substantial and competent evidence. As this Court noted in *Cook v. Skyline Corp.*, 135 Idaho 26, 35, 13 P.3d 857, 866 (2000), the trial court has discretion to allow a lay person to testify as to his or her physical manifestations of emotional distress where such manifestations do not rise to the level of a medical condition. Here, Sorensen testified about insomnia, anxiety, headaches and gastric problems. The trial court properly exercised its discretion in allowing this testimony, as the average juror would be familiar with these conditions.

The majority indicates that Sorensen was not entitled to damages for emotional distress since the initial act of misadvising her did not cause her emotional distress. It is stated that the subsequent act of attempting to correct the misinformation caused the dis-

tress. However, the provision of misinformation laid the groundwork for the emotional distress and was the proximate cause of the distress. When a person is pushed off of a 100 story building, no substantial detriment is experienced during the first 99 floors of the fall. The problem arises substantially after the wrongful act—when the victim hits the ground. We have the same situation here. The chain of events causing the emotional distress was set in motion when Trinity provided the oral and written information that caused Sorensen to make retirement plans that she probably would not have made, had she known the true facts. The emotional distress damages were appropriately award by the jury.

### D. Conclusion

The determinations of the district court and jury were well founded. The district court properly granted summary judgment to Sorensen on the contract issues, as well as the issues of breach of fiduciary duty and negligence. The damage award made by the jury is supported by substantial and competent evidence and in accordance with applicable legal principles. I would affirm.

Justice BURDICK concurs.