**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 36189**

| | | |
|---|---|---|
| RICH and RENEE BLACKMORE, husband and wife, both individually, and in their capacity as natural parents and guardians ad litem of RICH BLACKMORE, a minor child, | ) ) ) ) ) ) | Boise, May 2010 Term |
| | ) | 2010 Opinion No. 79 |
| Plaintiffs-Appellants, | ) ) | Filed:  July 6, 2010 |
| v. | ) ) | Stephen W. Kenyon, Clerk |
| | ) | |
| RE/MAX TRI-CITIES, LLC, SUE MIO, individually, BRAD THOMPSON, individually, and KEVIN and CHRIS RHINEHART, husband and wife, | ) ) ) ) ) | |
| Defendants-Respondents. | ) | |

Appeal from the District Court of the Third Judicial District of the State of Idaho, Payette County.  Hon. Gordon W. Petrie, District Judge.

The decision of the district court is <u>affirmed.</u>   Costs are awarded to Re/Max.

Johnson & Monteleone, L.L.P., Boise, for Appellants. Samuel D. Johnson argued.

Anderson Julian & Hull, L.L.P., Boise, for Respondents.  Phillip Collaer argued.

_____

W. JONES, Justice

## I.      FACTS AND PROCEDURAL HISTORY

This case concerns events surrounding the purchase of property by the appellants, Rich and Renee Blackmore.  The Blackmores were interested in moving from California to Idaho. Renee Blackmore (Renee) looked online for properties in Idaho and found a few that fit their needs.  One of those properties was listed by Brad Thompson (Thompson) of Re/Max Tri-Cities, LLC (Re/Max).  The Blackmores eventually traveled to Idaho to view properties.  Thompson showed the Blackmores their current property, which is located on First Street in Fruitland, Idaho

1

(the Property). The owners of the property at that time were Kevin and Chris Rhinehart. The selling agent for the Rhineharts was Sue Mio (Mio) of Re/Max.

The Blackmores had a friend, Rae Lubiewski, who is a licensed real estate agent, draft an offer to purchase the Property. The offer was faxed to the office of Re/Max and then Thompson took over for Lubiewski. The Blackmores entered into an independent contractor agreement for Thompson to act as their real estate agent. The offer was accepted by the Rhineharts, and the parties entered into a real estate purchase and sale agreement (the Purchase and Sale Agreement) on September 3, 2005. Under the terms of the Purchase and Sale Agreement, the transaction was contingent upon the Blackmores' satisfaction with the condition of the property. The Blackmores had the right to have the property inspected, and the contract included a procedure for repairs to be made by the Rhineharts. The Purchase and Sale Agreement gave the Blackmores the option not to continue with the transaction if necessary repairs were not made by the Rhineharts. It also provided that the transaction was contingent on the results of a "well inspection" satisfactory to the Blackmores.

The Rhineharts provided the Blackmores with a completed property condition disclosure form. The Blackmores thereafter obtained an inspection from a professional home inspector. The inspector found inconsistencies with representations made in the disclosure form. The Blackmores offered Addendum #1 to the Purchase and Sale Agreement, which placed additional conditions upon the transaction. The Rhineharts rejected Addendum #1 and suggested the parties agree to the terms of Addendum #2, which required the Blackmores to accept the property "as is" in exchange for a $10,000 reduction in the purchase price. The Blackmores accepted Addendum #2 on September 22, 2005. The closing occurred on September 30, 2005.

The day before the closing, Mio, without knowing a test had been requested, arranged for Alchem Laboratories to test the well water for coliform bacteria. Thompson first discussed the test with the Blackmores after he learned that Mio was having the water tested. Thompson relayed the results of the test to the Blackmores. There is debate over what was said in the communications between Thompson and the Blackmores regarding the test. The Blackmores claim that they asked Thompson for a full-panel water test to be performed, and Rich Blackmore (Rich) testified that he and Thompson "talked about doing a full-panel water test." Rich also testified that he and Thompson discussed what the inspection entailed, including the functioning of the well and the quantity and quality of the water. The Blackmores claim that Thompson then

informed them that the "water test came back fine . . . ." On the other hand, Thompson claims he informed the Blackmores of the limited scope of the test—that the test indicated that the well did not contain coliform. Rich admitted that he never asked for a copy of the test results and never paid for the test.

The Blackmores claim that about one year after moving onto the property, they noticed that their son had a lack of appetite, dark circles under his eyes and was lethargic. The Blackmores claim that they later learned that he suffered from a condition brought on by consumption of dangerous levels of arsenic. The Blackmores had their well tested; in total, three tests were performed. The first test revealed that the well water contained twenty parts per billion of arsenic; the second test showed that the water contained twenty-seven parts per billion; and the third test showed that the water contained ten parts per billion. The Environmental Protection Agency (EPA) mandates that the maximum contaminant level for arsenic in a community water system is fifty parts per billion. 40 C.F.R. § 141.11(a). Rich testified that the presence of arsenic, even at levels below the EPA standards, would have been unacceptable.

The Blackmores filed a complaint on August 3, 2007. The Blackmores claimed breach of contract, failure to disclose and negligence on the part of the Rhineharts; the Blackmores claimed breach of contract, breach of fiduciary duty and negligence on the part of Re/Max, Thompson and Mio (the Defendants).[1] The Defendants filed an answer and the Rhineharts filed an answer and a cross-claim for negligence, equitable indemnity and contribution.

The Defendants and the Rhineharts each filed a motion for summary judgment. The Blackmores filed a memorandum in opposition to the Rhineharts' and the Defendants' motions for summary judgment. The Blackmores also filed affidavits of Dr. Shawn Benner, Scott Petterson and Thomas Lloyd. The Defendants and the Rhineharts both filed a motion to strike the affidavits. The Blackmores filed a motion in opposition to each of the two motions to strike and filed supplemental affidavits of Dr. Benner and Scott Petterson. The Defendants and the Rhineharts each filed a motion to strike the supplemental affidavits.

A hearing was held before the district court and on December 9, 2008, the court granted summary judgment in favor of the Defendants and the Rhineharts. The court also struck a portion of Dr. Benner's and Lloyd's affidavits and struck Petterson's affidavit and both supplemental affidavits in their entirety. The Blackmores filed a motion for reconsideration,

---

[1] Re/Max is a defendant in this action because Thompson and Mio were acting as its agents.

seeking reconsideration of the negligence claim against the Defendants. On January 7, 2009, the district court denied the Blackmores' motion for reconsideration. The district court entered a judgment in favor of the Defendants on January 9, 2009. The Blackmores filed a notice of appeal from the order denying the motion for reconsideration, but not from the judgment in favor of the Defendants and the Rhineharts.

## II. ISSUES ON APPEAL

1. Whether this Court should reverse the district court's grant of summary judgment on the claim of negligence.

2. Whether the district court abused its discretion when it struck affidavits.

3. Whether the district court abused its discretion when it denied the Blackmores' motion for reconsideration.

4. Whether attorney fees should be awarded to the Blackmores on appeal.

## III. STANDARD OF REVIEW

"The standard of review on appeal from an order granting summary judgment is the same standard as that used by the district court in ruling on the motion for summary judgment." *Sorensen v. Saint Alphonsus Reg'l Med. Ctr., Inc.*, 141 Idaho 754, 758, 118 P.3d 86, 90 (2005) (citing *Tolley v. THI Co.*, 140 Idaho 253, 259, 92 P.3d 503, 509 (2004)). "Summary judgment is proper where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." I.R.C.P. 56(c); *Id.* (citing *Tolley*, 140 Idaho at 259, 92 P.3d at 509). The facts are to be liberally construed in favor of the non-moving party. *Sorensen*, 141 Idaho at 758, 118 P.3d at 90 (citing *Tolley*, 140 Idaho at 259, 92 P.3d at 509).

## IV. DECISION

### A. This Court affirms the district court's grant of summary judgment on the claim of negligence.

The Blackmores challenge the grant of summary judgment in favor of the Defendants on the claim of negligence. The elements of negligence include: duty, breach of that duty, causation, and damages. *McKim v. Horner*, 143 Idaho 568, 572, 149 P.3d 843, 847 (2006). The district court found that the Defendants did not owe a duty to the Blackmores under the Idaho Code or common law. The Blackmores challenge both findings of the district court.

First, the Blackmores challenge the finding of the district court that the Defendants did not owe a duty to the Blackmores under the Idaho Code. Idaho Code § 54-2087, provides:

4

> If a buyer or seller enters into a written contract for representation in a regulated real estate transaction, that buyer or seller becomes a client to whom the brokerage and its licensees owe the following agency duties and obligations:
>
> . . . .
>
> (2) To exercise reasonable skill and care[.]

The above duties and obligations are limited by I.C. § 54-2087(7), which provides:

> Unless otherwise agreed to in writing, a brokerage and its licensees owe no duty to a client to conduct an independent inspection of the property and owe no duty to independently verify the accuracy or completeness of any statement or representation made regarding a property. Unless otherwise agreed to in writing, a brokerage and its licensees owe no duty to conduct an independent investigation of either party's financial ability to complete a real estate transaction.

The Blackmores asserted before the district court that it was negligent for the Defendants to assure that a "full-panel water test" had been performed when in fact one had not.[2] The district court dismissed the Blackmores' claim because it found that the Defendants did not have a duty to conduct an independent inspection of the property. The district court took note of the fact that the Purchase and Sale Agreement allowed the Blackmores to conduct a "well inspection," but held that Addendum #2 eliminated any contingencies on the transaction as the Blackmores agreed to take the property "as is." Also, the district court held that as provided under I.C. § 54-2087(7), unless agreed to in writing, a real estate agent is not obligated to conduct an independent inspection of the property, and in this case, no such obligation was reduced to writing.

The Blackmores claim that under I.C. § 54-2087, the Defendants did not have an affirmative duty to test the well water. The Blackmores contend, nevertheless, "At the point when [Thompson] undertook a voluntary or requested inspection of the water quality on the well servicing the property, [the Defendants] assumed a duty to perform such inspection with due and reasonable care, [sic] and to accurately and truthfully convey the extent and results of the water test to the Blackmores."

Secondly, the Blackmores challenge the finding of the district court that the Defendants did not owe a duty of care under common law. The district court dismissed the Blackmores' claim because it found that absent the Purchase and Sale Agreement, the Defendants would not

---

[2] The Blackmores also claimed the Defendants violated their statutory duty by failing to disclose an adverse material fact, the existence of arsenic in nearby wells. This was the only claim of negligence asserted against Mio. The district court dismissed the claim, and the Blackmores did not challenge that ruling on appeal.

have had a duty to test the well water. In ruling, the court relied upon precedent providing that a tort action may not be brought if the claim would not exist absent a contract.

The Blackmores claim that they may bring a common law tort claim because the Defendants had a duty to exercise care regardless of the existence of the Purchase and Sale Agreement. The Blackmores claim that the Defendants owed them a general duty to exercise reasonable care. While the Defendants did not have a duty to perform an independent test of the well water, the Blackmores again assert that once one was voluntarily undertaken, the Defendants owed them a duty under the common law to relay the results of that test with care. This duty, the Blackmores contend, was owed apart from the Purchase and Sale Agreement between the parties.

While there may be a question of fact over communications concerning the test, that factual issue is irrelevant because this Court holds that the Defendants did not owe the Blackmores a duty of care under the Idaho Code or common law. The real estate transaction was initially contingent upon the outcome of a "well inspection." Nevertheless, before receiving results of the inspection, the Blackmores willingly agreed to the terms of Addendum #2. Under the Addendum, the Blackmores agreed to eliminate all contingencies and take the property "as is." Any duty that possibly could have been owed was eliminated when the Blackmores agreed to the terms of the Addendum. With contingencies removed, it is hard to imagine what the Blackmores had to gain from the well inspection. No matter the result, the Blackmores were obligated to purchase the property. It is important to note that the well inspection was not done until Mio requested it the day before closing. Addendum #2, on the other hand, was signed by the Blackmore's on September 22, 2005. Obviously, at the time the Blackmore's signed Addendum #2, they did not know the results of the well inspection and must have disregarded the importance of the inspection when they agreed to take the property "as is." The record contains an e-mail from Mrs. Blackmore to Thompson dated September 28, 2005, inquiring about the results of a well test "if it ever got done." This e-mail indicates that even after accepting the property "as is," Mrs. Blackmore might have been curious about the results, but the use of the phrase "if it ever got done" indicates that she did not know the results of the test before signing Addendum #2 and is an indication that the Blackmores disregarded the importance of the test.

Moreover, I.C. § 54-2087(7) expressly eliminates a duty. It provides that unless agreed to in writing, the Defendants did not have a duty to conduct an independent test of the well water or verify the accuracy or completeness of the test results. The Defendants did not owe a duty because such an agreement was not memorialized with a written instrument.

This Court does not need to assess whether the district court abused its discretion when it struck affidavits because we affirm the dismissal of the negligence claim, which the affidavits sought to establish.

**B.      The district court did not abuse its discretion when it denied the motion for reconsideration.**

After the district court granted summary judgment in favor of the Defendants, the Blackmores filed a motion for reconsideration of the negligence claim. The district court denied the Blackmores' motion for reconsideration. The Blackmores now claim that the district court abused its discretion when it denied the motion for reconsideration.

The district court has discretion to grant or deny a motion for reconsideration. *Spur Products Corp. v. Stoel Rives LLP*, 143 Idaho 812, 817, 153 P.3d 1158, 1163 (2007) (citing *Jordan v. Beeks*, 135 Idaho 586, 592, 21 P.3d 908, 914 (2001)). When reviewing the court's discretionary decision, we determine whether the court (1) correctly pierced the issue as one of discretion; (2) acted within the boundaries of such discretion and consistently with applicable legal standards; and (3) reached its decision by an exercise of reason. *Lee v. Nickerson*, 146 Idaho 5, 9, 189 P.3d 467, 471 (2008) (citing *State Ins. Fund v. Jarolimek*, 139 Idaho 137, 138-39, 75 P.3d 191, 192-93 (2003)).

The Blackmores assert three claims as to how the district court abused its discretion. First, the Blackmores claim that "[b]y no exercise of reason, given the allegations in the verified complaint and the accompanying and supporting deposition testimony cited herein throughout, can it be found that summary judgment was proper in this action." Second, the Blackmores claim that "the court was certainly outside the boundaries of its discretion when it chose to wholly ignore the allegations of the verified complaint in reaching its decision on summary judgment and the subsequent decision on reconsideration." Lastly, the Blackmores claim that the district court abused its discretion by ruling on the credibility of the allegations in the verified complaint. The Blackmores assert that the verified pleading and depositions were enough to withstand summary judgment, and since summary judgment was granted, the court effectively decided on the allegations in the verified complaint.

7

The district court did not abuse its discretion as it satisfied each of the three prongs under the abuse of discretion standard. The district court expressly recognized the discretionary nature of its decision. Also, the court acted consistently with the applicable legal standard and exercised reason when it denied the motion on the grounds that the Blackmores did not provide new facts to support its claim and failed to direct the court to evidence in the record that would create a genuine issue of fact. *See Johnson v. Lambros*, 143 Idaho 468, 471–473, 147 P.3d 100, 103–105 (Ct. App. 2006) (stating that motions for reconsideration were properly denied in the absence of additional evidence that would provide a basis to reconsider a previous ruling).

**C.      This Court does not award attorney fees to the Blackmores on appeal.**

The Blackmores claim that they are entitled to attorney fees on appeal pursuant to I.C. § 12-121 because I.C. § 12-121 allows the award of attorney fees to the prevailing party in a dispute where attorney fees are not otherwise provided by statute.

Attorney fees are not awarded to the Blackmores because they have not prevailed on appeal. *See Sunnyside Indus. and Professional Park, LLC v. Eastern Idaho Public Health Dist.*, 147 Idaho 668, 675, 214 P.3d 654, 661 (Ct. App. 2009) (holding that under I.C. § 12-121, attorney fees may not be awarded to a party that does not prevail). Re/Max and Thompson did not request attorney fees on appeal.

## V.      CONCLUSION

For the foregoing reasons, this Court affirms the grant of summary judgment in favor of Re/Max and Thompson. The district court did not abuse its discretion when it denied the Blackmores' motion for reconsideration. Attorney fees are not awarded to the Blackmores on appeal. Costs are awarded to Re/Max and Thompson.

Chief Justice EISMANN, Justices BURDICK, J. JONES and HORTON **CONCUR.**

8